UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JOSEPH DODD, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 4:06-CV-00290-RP-CFB |
| | : | |
| vs. | : | |
| | : | REPORT AND RECOMMENDATION |
| C/O STEVEN FLOYD, | : | ON DEFENDANTS' MOTION |
| C/O JESSE TOYNE, | : | FOR SUMMARY JUDGMENT |
| C/O WILLIAM WRIGHT, | : | |
| | : | |
| Defendants. | : | |

     This matter comes before the Court on Defendants' Motion for Summary Judgment (Clerk's No. 33), filed August 22, 2007, by Defendants Steven Floyd, Jesse Toyne, and William Wright, correctional officers at Newton Correctional Facility (NCF). Plaintiff, Joseph Dodd, filed his Complaint while he was an NCF inmate.[1] He asserts his claim under 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth and Fourteenth Amendments when they exposed him to secondhand smoke that had a detrimental effect on his health.[2] Dodd seeks compensatory and punitive damages.

     Defendants assert they are entitled to summary judgment because Dodd did not exhaust his administrative remedies before suing over prison conditions in an action under federal law, which is required by 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 (PLRA). In the present Motion, Defendants do not challenge the merits of Dodd's § 1983 claim. Plaintiff filed a Resistance to the Motion on December 4, 2007.

---

   [1] Dodd is currently incarcerated at a correctional facility outside Iowa.

   [2] In their Motion, Defendants maintain that this is the only claim Dodd is asserting. Dodd does not dispute Defendants' contention. Accordingly, the Court construes Dodd's claim as described above.

This case was referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). This matter is fully submitted. After carefully considering the summary judgment record, the Court finds and recommends as follows on the issues presented.

## STANDARD FOR SUMMARY JUDGMENT

A court shall grant a motion for summary judgment only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute about a material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* A court must consider the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To preclude the entry of summary judgment, the nonmovant must make a showing sufficient to establish the existence of every element essential to his case, and on which he has the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. When a motion is made and supported as required in Federal Rule of Civil Procedure 56(a), the adverse party may not rest upon the mere allegations or denials in his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

## MATERIAL FACTS NOT IN DISPUTE

Unless otherwise indicated, the following facts are either undisputed or viewed in the light most favorable to Dodd, the non-moving party.

Dodd was an inmate at NCF during two periods: from March 31 to October 13, 2005, and from January 5 to July 12, 2006. He alleges that, "while [he] was incarcerated at Newton Correctional Facility he would often exercise in a small yard with no [air] circulation," where "Defendants would smoke cigarettes" and "often blow smoke into [Dodd's] face," resulting in the inmate breathing in "much of the exhaled smoke." (Am. Compl. at 3 (alterations added).) He does not specify whether the alleged acts occurred in 2005, in 2006, or in both years.

Dodd had the right under prison policy to complain about the secondhand smoke by filing a grievance, which is a formal, written complaint, concerning "policies, conditions, health

care treatment, employees, and other offenders within the institution that affect them personally." (Defs.' App. at 41.) Defendants provided a copy of the Iowa Department of Corrections' grievance procedures and policy that became effective in April 2006.[3]  Under the procedures and policy, before filing a grievance, an inmate had to first try to resolve his complaint informally and correct the perceived problem with the help of his counselor, living unit manager, or administrative staff.  If informal resolution failed, the inmate had thirty days from the date of the alleged incidents to file a written grievance with the grievance officer.

     Inmates or employees involved in a complaint did not participate in the formal resolution process.  The grievance process was confidential, and inmates could send sealed letters to the grievance officer or the authorities resolving an appeal, although staff could inspect for contraband an inmate's outgoing mail in his presence.

     Within seven days of receiving an inmate's written grievance, the grievance officer numbered the grievance; initially reviewed it; and notified the inmate in writing that the grievance had been received and what procedure (including standard or emergency) would be used to process the grievance, or whether the grievance was being returned to the inmate because the inmate needed to properly complete and resubmit the grievance, because the matter had been previously grieved or because the complaint was non-grievable.

     Within twenty-one days of receiving an inmate's written grievance under the standard process, or sooner under the emergency process, the grievance officer provided a written response and recommendation based on an investigation.  Alternatively, if the grievance officer could not give a response within twenty-one days, he or she had to notify the inmate in writing that the investigation was continuing and an extension would be given.  Under some circumstances, the grievance officer could refer the grievance to the grievance committee for a hearing.

---

[3] Because the parties apparently presume that the relevant portions of the April 2006 policy are the same in all material respects as the comparable portions of the grievance policies in effect at all relevant times in this case, the Court presumes likewise for purposes of this Report and Recommendation.

To appeal the initial response of the grievance officer or grievance committee, the inmate had to submit a written appeal within fifteen days to the Warden or his designee. After receiving an appeal, the Warden or his designee had to respond in writing within fifteen days. The inmate could appeal the Warden's response by writing within fifteen days of the date of the Warden's response to the Grievance Appeal Coordinator. In the final appeal step, the Grievance Appeal Coordinator had to respond within thirty days of receiving the appeal. A prisoner could use an emergency process, which was faster than the standard process, if there appeared to be a substantial risk of physical injury or other serious and irreparable harm if regular time limits were followed.

If a time limit expired "at any step" in the grievance process, the grievant could take the next step in the process unless a written extension had been given. *Id.* at 45.

NCF kept grievance records in a confidential file system separate from the inmates' master files. The grievance policy required that at a minimum the grievance files had to include the written complaint, investigation information, the grievance officer's or grievance committee's initial response, and any appeal responses. NCF kept grievance records at least five years. The prison posted the grievance policy and made it available to all inmates.

Defendants state that Dodd filed only three grievances while he was at NCF, and that none of his filed grievances concerned his exposure to secondhand smoke in the exercise yard. (Defs.' Statement Undisputed Mat. Facts at ¶ 11.) In support of their statement, Defendants cite the affidavit of Katherine Kerr, Executive Officer 1, who investigates and responds to NCF inmate grievances, and who maintains the confidential record of inmate grievances.

To support her statement that Dodd filed only three grievances, and that none of the grievances concerned exposure to secondhand smoke in the exercise yard, Kerr points to three grievances attached as exhibits to her affidavit. In the first grievance, filed July 11, 2005, Dodd complained that earlier that day, Officer McBride denied Dodd his weekly scheduled opportunity to go to the prison's library for legal materials. According to Dodd's grievance, the officer told him that no staff members were available to take him to the library, although Dodd saw Officer Floyd smoking cigarettes in front of Unit B. In the grievance, Dodd sought no redress for exposure to secondhand smoke or for retaliation. Dodd wrote no answer to the

4

grievance form's question concerning whether he had exhausted the informal resolution procedures.

Kerr signed and numbered the grievance and sent Dodd a receipt indicating she would process the grievance under the standard procedure. Kerr investigated Dodd's complaint. On July 12, 2005, McBride submitted a written response to the grievance, stating that he and Dodd had no conversation about the library, and a delay in needed staff arriving on the unit precluded the scheduled library visit for inmates in Dodd's tier. On July 14, Kerr sent Dodd her response to his grievance. She denied the grievance, stating that library visits were a privilege, not a right, and were scheduled according to staffing; she understood that Dodd's missing his library visit was not an ongoing problem. Dodd appealed to the Warden, contending he was denied a privilege – library access – even though he had violated no prison rule, because an officer wanted to take a cigarette break during working time, rather than take inmates to the library. Dodd did not mention retaliation, intimidation, or harassment, and he did not complain about secondhand smoke. The Warden denied the appeal on July 21.

In Dodd's second filed grievance, dated April 25, 2006, he complained that after he told Officer Blythe about a threat he had received from another inmate, Blythe and another officer at first ignored the situation and then, after Dodd again complained, Blythe put both Dodd and the other inmate in segregation while officers investigated the matter. Dodd complained in his grievance that Blythe's act of putting him in segregation along with the other inmate was unfair punishment. Dodd did not mention secondhand smoke or contend that Blythe put him in segregation to retaliate against him. Dodd stated on the grievance form that he had exhausted the informal resolution procedures with Lt. Morris.

As with the previous grievance, Kerr signed and numbered the grievance and sent Dodd a receipt indicating she would process the grievance under the standard procedure. Kerr investigated. On April 26, Lt. Morris submitted a written response to the grievance, stating that in cases such as Dodd's, when no staff member witnessed the alleged threat, it was "common to place both parties in administrative segregation until an investigation can be completed. To not do so would encourage inmates who would like to see another inmate locked up to simply report to staff that he had been threatened." (Defs.' App. at 61.) On April 27, Kerr denied the

grievance, stating that prison policy allowed officials to place an inmate in segregation while an investigation was being conducted. No evidence indicates Dodd appealed Kerr's decision to the Warden.

In the inmate's third filed grievance, which he filed May 22, 2006, Dodd alleged as follows:

> On approximately 8:30 p.m. May 17th and 18th I was retaliated by the Sergeant. The dog security from a grievance I file[d] three days prior.[4] After I was shook down and the dog le[ft] dog hair on my bed[d]ing, I asked C/O Berry for different bed[d]ing, which she give me. The very next day the dog se[c]urity again retaliated, from me getting new bed[d]ing. I had to clean the cell on my hand and knees, which also C/O Berry observed and pass it on the next day to the dog sergeant where he intimid[ated] me with his dog, by shaking me down again, leaveing [sic] more dog hair on my bed[d]ing "intention[al]ly"[]to show he tr[i]ed to play it off, on May 18 he shooked [sic] down cells on both side[s] of me. But after everyone went in, the sergeant stated, "Hey, Dodd, by you asking for new bed[d]ing "sheets" is not going to ap[p]ly. And don't be l[y]ing anymore about it. I did not lie to get sheets:[] "So I said," yes sir until now I'm speaking to you about it.

*Id.* at 65-66 (alterations added).

The copy of the May 22, 2006, grievance that Defendants included in their Appendix differs somewhat from the copy that Dodd attached to his Complaint and included in his Appendix. Most of the differences are in the section of the grievance form entitled, "Description of Problem," and they are minor. *Compare* Pl.'s App. at 3 *and* Defs.' App. at 14 (for example, "dog hairs") *with* Defs.' App. at 65 ("dog hair"). The main difference between the copies is on the grievance form section entitled, "Action Requested by Offender," which is blank in Defendants' copy (Defs.' App. at 65), but which in Dodd's copy contains the following: "I would like for him and (other's) [sic] to stop targeting me, and passing on false statement to the new C/O to target me out cospireing [sic] by retaliation" (Pl.'s App. at 3; Defs.' App. at 14). Both Dodd's and Defendants' copies indicate that Dodd attempted informal resolution procedures with prison officials.

---

[4] The record contains no copy of the grievance Dodd asserted he filed on approximately May 14 or 15, 2006, and no indication of the grievance's subject matter.

On May 25, Sergeant Rusty Ringler, the sergeant about whom Dodd complained, submitted the following written response to the grievance:

> I have performed random K-9 searches in I/M Dodd's cell on several occasions. K-9 Zeke was not on I/M Dodd's bunk in the dates in question. Even if the K-9 had been on Dodd's bunk in the process of performing a narcotic search, which he was not, I/M Dodd would not have been provided new sheets. Because I perform around 200 K-9 cell searches each month, I do not allow new bedding unless the K-9 has left an obvious mess (dirt, mud[], excessive hair, etc.) during the course of the search, or if the inmate indicates that he has a documented canine allergy.

(Defs.' App. at 64 (alteration added).)  The same day, Kerr sent Dodd a grievance acknowledgment and receipt indicating she was returning his grievance and not processing it because he did not provide any "action requested." *Id.* at 63.  No evidence indicates that Dodd resubmitted his grievance or appealed Kerr's action to the Warden.

Dodd admits Defendants' Statement of Fact that he filed only three grievances while he was at NCF, and that none of his three filed grievances concerned his exposure to secondhand smoke in the exercise yard.  (Pl.'s Statement Mat. Facts at ¶ 11.)  Dodd maintains, however, that he was unable to grieve the secondhand smoke issue because of the retaliation and harassment by NCF officers.  *Id.*

Dodd asserts that in an attempt to stop Defendants from exposing him to secondhand cigarette smoke, he complained about the secondhand smoke to Lieutenant Conrad, who said he would handle the matter but did not.  Dodd does not state when he complained to Conrad.

In his Complaint, Dodd claims that after he spoke with Lieutenant Conrad about his secondhand smoke complaint, the result was, "No result/Nothing but intimidation there after." (Compl. at 5.)  In his Amended Complaint, Dodd asserts, "That as a result of Plaintiff's interaction with Lieutenant Conrad on the smoking issue, he was subject to intimidation by other prison officials."  (Am. Compl. at ¶ 17.)  Dodd claims that the harassment made him afraid to exhaust his administrative remedies in regard to the secondhand smoke, because he was afraid prison staff would retaliate against him if he filed a grievance about the matter.  (Mem. Supp. Res. Defs.' Mot. Summ. J. at 5.)  Dodd asserts that, "In response to this intimidation and

retaliation," he "filed several grievances complaining of the actions being taken against him by the NCF officers." (*Id.* at 2; *see* Pl.'s Statement Mat. Facts at ¶ 21.)

In support of his contention that he filed several grievances in response to officers' intimidation and retaliation against him for his interaction with Conrad on the secondhand smoking issue, Dodd points to four grievance forms in his Appendix. (Mem. Supp. Res. Defs.' Mot. Summ. J. at 2.) The first is the May 22, 2006, grievance cited above. The other three grievance forms, unlike the grievances described above, contain no grievance officer's signature and no grievance number assigned by a grievance officer. Dodd offers no explanation for why the grievance forms do not contain a grievance officer's signature or a grievance number. The record contains no prison official's responses to these grievances, nor does the record indicate Dodd filed any appeals in relation to these grievances.

Dodd dated the first of these unnumbered grievance forms June 4, 2006. On the form, he described the reason for the grievance as "Exploitation of Authority and Harassment By C/O Berry and Dog Sgt. Ringler," and he alleged as follows:

> On June 4, 2006 I was in line talking to detainee Edger in cell 61, and Nelson Solis cell 48 about the street's [sic] hanging out and shooting dice's [sic]. . . . We was not talking loud. All of a sudden C/O Berry for some reason holler-out [sic] "Dodd" what did you say. I asked her what is she talking about? She didn't say anything but "call back-up security" – immediately, the dog sergeant came and talked with her. . . . I tr[i]ed to speak with Berry after I fin[]ish eating. She holler just go to your cell "now[.]" [] Now I have to worry every day about Retaliation and what is next. And why these officer's [sic] wast[e] so much energy harassing and conspir[]ing, to prove their prior insufficient statements to their authority. This is a pattern of harassment [] also retaliation. C/O Berry, the dog sergeant Ringler, and now lately Blyth[e] are unlawfully and wrongfully us[]ing their authority.

Pl.'s App. at 7-8 (alterations added).

In the next two unnumbered grievance forms[5], which Dodd dated June 5, 2006, he stated as follows:

> On 6/5/06 . . . I spoke with Lt. Conrad about a matter that have been ongoing by the harassment and retaliation of Sgt. Ringer, C/O Berry and others. By Lt. Conrad talking to me about this issue involv[]ing this same C/O whom I was

---

[5] These are apparently two copies of the same grievance, except that one copy contains what appears to be a list of inmates' names. (*See* Pl.'s App. at 1, 2, 5 and 6.)

> complain[]ing about, and also is a[n] authority is a conflict.  I should of been able
> to of had a private conversation.  By not being disparity between authorities I was
> subjected, and the Sgt. gain from that conversation which are corrupt: influence
> by authority whom wrongfully use their character to procure another report by the
> conversation we had in the Lt. office.
> These witness I am presenting, will affirm all the harassment and the intimidation
> I have been ongoing since I've been here/and them as well.  And also they
> themself are intimidated to file a grievance due to the corruption by authority.
> This is a serious issue when authority do not have control of the[ir] staff.  It looks
> as they are being influence[d] instead of obeying the[ir] authority.
> I have a right not to be subject of C/O's conspir[]ing and retaliating from fil[]ing
> grievances, and also not to be target out which I am today from being last in line
> or in the middle, either way it is harassment and intimidation, and authority are
> not addressing the issue!

Pl.'s App. at 1,2, 5 and 6 (alterations added).

On June 20, 2006, Dodd filed his *pro se* Complaint.  The Court subsequently ordered Dodd to amend his Complaint to state, "whether he filed any written grievances and appeals, the dates of such grievances, and the responses he received to his grievances."  (Clerk's Nos. 5 at 2, 11 at 2, and 13 at 2.)  Dodd responded in a filing on November 27, 2006, stating that on approximately April 5, 2006, he filed "a grievance on [Defendants Floyd, Toyne and Wright] for negligence."[6]  (Defs.' App. at 23 (alteration added).)  Dodd asserted that on approximately April 11, 2006, he received a response to his grievance that stated, "'grievance not grievable' no other explanation."  *Id.*  According to Dodd, he appealed the decision "immediately on April 11, 2006," to Kerr.  *Id.*  The record does not have a copy of the grievance, response, or appeal.

---

[6] The record has no additional information concerning the contents of Dodd's April 5, 2006, grievance against Defendants.  Following Dodd's November 27, 2006, assertion that he filed a grievance on April 5 against Defendants for negligence, the Court stated in its Order filed December 7, 2006, that it had previously ordered Dodd to amend his Complaint to state, "whether he filed any written grievances and appeals, the dates of such grievances, and the responses he received to his grievances," and that after several extensions, "plaintiff has now amended his complaint to state that he has grieved *his claim*."  (Clerk's No. 15 at 1 (emphasis added).)  For purposes of analyzing the present Motion, therefore, the Court assumes that in Dodd's November 27, 2006, assertion that he filed a grievance against Defendants on April 5, 2006, for negligence, he was asserting that his present secondhand smoke complaint against Defendants was the subject of the grievance.

9

Dodd contended that when he received no response to his April 11, 2006, appeal, he sent a kite requesting a response to the appeal, and on May 25, Kerr replied that, "she had sent me a respon[s]e on the appeal, and if I wanted a second copy to submit a store order." *Id.* (alteration added). Dodd maintained he still did not receive a copy of his appeal, and unnamed prison staff continued to intimidate and retaliate against him for filing the grievance. Dodd stated he continued "requesting for Lt. Conrad and Unit Man[ag]er Janice Berry, and for the Major Miller and Capt. Blomme. They all was told of my situ[]ation. Miller kept requesting for me to speak with Janice Berry. They all was conspiring!" *Id.* (alterations added).

## III. ANALYSIS

### A. Exhaustion Requirement

Defendants assert that Dodd failed to exhaust his administrative remedies as required under the PLRA, and therefore his § 1983 claim is barred.

The PLRA's exhaustion provision states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In prisoner cases covered by § 1997e(a), exhaustion is mandatory. *Lyon v. Vande Krol*, 305 F.3d 806, 812 (8th Cir. 2002). A lack of exhaustion, however, does not deprive federal courts of subject matter jurisdiction. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005).

An inmate satisfies § 1997e(a)'s exhaustion requirement by exhausting available remedies within the correctional facility. *See Williams v. Norris*, 176 F.3d 1089, 1089 (8th Cir. 1999) (per curiam). Section 1997e(a) does not require exhaustion of all remedies, but only of those administrative remedies that are available. *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001). Because a failure-to-exhaust claim is an affirmative defense, the defendant has the burden of proving the administrative process was available. *Id.* at 697.

Dodd asserts his claim should not be barred, arguing that ISP's grievance system was not an available administrative remedy within the meaning of the PLRA. Defendants maintain that the prison's grievance system was an available remedy.

## B. Unavailable Administrative Remedies

The exhaustion requirement is waived if a court deems the administrative process to have been unavailable to the inmate. *See id.* at 697-98. Courts generally deem administrative remedies unavailable only where prison officials thwart or otherwise prevent a prisoner from grieving. *Compare Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (deeming administrative remedies available because no evidence indicated that prison officials thwarted initiation of grievance procedures or that any official made it impossible to file grievances); *Lyon*, 305 F.3d at 812 (holding administrative remedies were available to inmate, when inmate chose not to follow the steps that the prison's grievance procedure outlined because he believed to do so would be pointless, based on officials' comments that the decision to exclude the inmate from religious services was made by an outside party and not by the prison); *Washington v. Uner*, No. 07-1343, 2008 WL 1723475 at *1 (8th Cir. Apr. 15, 2008) (per curiam) (unpublished) (holding that prisoner who was assaulted by gang members because he worked as a prisoner informer failed to exhaust his administrative remedies on his failure-to-protect claim against prison officials, because prison investigator's warning to prisoner not to reveal his informer status did not thwart the prisoner's right to use the grievance procedure) *with Foulk*, 262 F.3d at 697-98 (concluding the prisoner had exhausted his available administrative remedies, when prison officials failed to respond to the prisoner's request for informal resolution and the prisoner's testimony indicated no further administrative proceedings were available to him under the grievance process); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (deeming administrative remedies unavailable because prison officials refused to provide the prisoner with grievance forms).

If administrative remedies are available, they must be exhausted even if the inmate subjectively believes that administrative remedies are unavailable or that pursuing administrative remedies would be pointless. *Lyon*, 305 F.3d at 809; *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000); *see Overton v. Davis*, 460 F. Supp. 2d 1008, 1011 (S.D. Iowa 2006) (holding administrative procedures were available to inmate, where nothing other than inmate's own speculation supported the conclusion that the grievance officer told the inmate he would be subject to disciplinary action if he filed a formal grievance, such speculation was insufficient to

constitute an exception to the PLRA's requirement to exhaust any available administrative remedies).

In this case, the parties do not dispute that Dodd did not exhaust the grievance process regarding his alleged exposure to secondhand smoke. The issue is whether the grievance process was unavailable to Dodd, resulting in waiver of the exhaustion requirement. Defendants, through the affidavit of Katherine Kerr and through grievances filed by Dodd, provided evidence that the grievance process was available, and they have thus met their burden. To raise a genuine issue of material fact on the availability issue, Dodd must present sufficient evidence to allow a reasonable jury to conclude that prison officials thwarted or otherwise prevented him from availing himself of the prison grievance process. *See Gibson*, 431 F.3d at 341.

The Court believes Dodd is presenting two arguments to support his contention that ISP's grievance system was not an available remedy. First, Dodd argues that, "Plaintiff did not exhaust his administrative remedies in regard to the cigarette smoking because he was afraid of retaliation from the prison staff at NCF" after he received "direct threats and harassment from NCF officers because of his complaining to Lieutenant Conrad about the Defendants' harmful behavior." (Mem. Supp. Res. Defs.' Mot. Summ. J. at 5.) The second argument, which Dodd describes as similar to the first, is that he, "was not required to exhaust the grievance process before filing a formal suit with the court because he first complained about the situation to Lieutenant Conrad, but was ignored." *Id.* at 4 ("Like the inmate in *Foulk*, Plaintiff attempted to exhaust all his administrative remedies before formally filing suit with the court, but was prevented from doing so by prison staff," whom Dodd asserts harassed and retaliated against him because of his complaint to Conrad).[7]

### 1. Fear of Retaliation

Dodd argues that because he complained to Conrad about Defendants' acts of subjecting him to secondhand cigarette smoke, he "received direct threats and harassment from NCF officers" (Mem. Supp. Res. Defs.' Mot. Summ. J. at 5), and "intimidation and retaliation from the guards" (*id.* at 2). He further maintains that his "legal library access was denied, he was

---

[7] To the extent that Dodd's arguments may be viewed as one argument rather than two, the Court believes the following analysis as set forth in sections 1 and 2 below would apply.

placed in administrative segregation, and was specifically targeted for multiple K-9 searches." *Id.* As a result, Dodd claims, he did not exhaust his administrative remedies regarding the secondhand smoke issue, "because he was afraid of retaliation from the prison staff." *Id.* at 5. In support of this argument, Dodd relies on *Kaba v. Stepp*, 458 F.3d 678, 682 (7th Cir. 2006) (holding disputed factual issues existed as to whether administrative remedies were available to inmate, and thus as to whether he failed to exhaust his administrative remedies, when inmate provided evidence that officials' misconduct prevented him from filing a grievance).

The Court discerns Dodd's argument as being that prison officials prevented him from exhausting his administrative remedies concerning secondhand smoke by retaliating against him because he complained to Conrad about Defendants' actions of exposing him to secondhand smoke, thus causing Dodd to fear future retaliation if he tried to exhaust his administrative remedies in regards to his secondhand smoke complaint; therefore, the grievance system was not available to Dodd under the PLRA. *See Miller,* 247 F.3d at 740 ("We believe that a remedy that prison officials prevent a prisoner from "utiliz [ing]" is not an "available" remedy under § 1997e(a)[.]").

When a plaintiff is trying to establish that prison staff precluded him from fully exhausting his administrative remedies, he must present evidence rather than mere statements of belief or unsupported assertions. *See Gibson,* 431 F.3d at 341 ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances"; holding that the district court did not err by granting summary judgment in favor of the defendants, and noting that a plaintiff's subjective belief that administrative procedures were not available for him to exhaust was not determinative of the exhaustion requirement); *Sergent v. Norris,* 330 F.3d 1084, 1086 (8th Cir. 2003) (per curiam) ("Significantly, however, we find no evidence in the record before us that [the plaintiff] asserted below, to the district court, that he was being prevented from effectively utilizing grievance procedures"; concluding that district court properly dismissed the case without prejudice for failure to exhaust, based on the record the district court had before it when the court ruled) (alteration added); *Foulk*, 262 F.3d at 698 (stating that plaintiff's evidence, his testimony, indicated that the prison's failure to respond to his informal resolution request

13

precluded him from filing a grievance and suggested he had exhausted his available remedies because no further administrative proceedings were available to him; defendant, on the other hand, pointed to no evidence in the record that established that the inmate could indeed have filed a grievance despite the prison's failure to respond to his informal resolution request); *Overton*, 460 F. Supp. 2d at 1011 ("Further, nothing in the record supports Plaintiff's assertion that, had he attempted to file a formal grievance, he would have been subjected to disciplinary action.")  In *Kaba*, the case on which Dodd relies, the inmate's evidence that threats to his life made administrative remedies unavailable to him included his three sworn affidavits, a prison-administered lie detector test indicating he was truthful in the first affidavit, the affidavit of another inmate, and a doctor's documentation of the inmate's fears about being transferred back to the prison where an inmate assaulted him.  *Kaba*, 458 F.3d at 682.

For evidence to support his argument, Dodd asserts that in response to the officers' alleged intimidation and retaliation, he filed "several grievances complaining of the actions being taken against him by the NCF officers," and he cites the grievance he filed May 22, 2006, and the grievance forms dated June 4 and 5, 2006, which do not contain a grievance officer's signature or a grievance number.  (Mem. Supp. Res. Defs.' Mot. Summ. J. at 2.)  Defendants dispute that the May 22 grievance and the June 4 and 5 grievance forms provided sufficient evidence to preclude summary judgment on the exhaustion issue.  The Court agrees for the following reasons.

### a.  May 22, 2006, Grievance

For several reasons, the Court finds the May 22, 2006, grievance does not provide sufficient evidence to raise a genuine issue of material fact to establish Dodd's argument.

First, in the May 22, grievance, Dodd asserts the alleged retaliatory acts on May 17 and 18, 2006, were causally related to a grievance – which he does not describe – filed three days before.  No evidence shows the earlier grievance was related to the secondhand smoke issue.  No evidence raises an inference that the May 22 grievance was related to the secondhand smoke complaint.  Dodd's contention that the May 22 grievance supports his argument that officers retaliated against him because of his complaining to Conrad about secondhand smoke is mere speculation and conjecture.  The Court holds Dodd has not provided sufficient evidence to raise

a genuine issue of material fact any alleged retaliation was causally related to Dodd's attempt to informally resolve his secondhand-smoke complaint with Conrad.  *Cf. Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-1029 (8th Cir. 2006) (holding that the plaintiff could not establish the causal element of her retaliation claim, when she offered mere speculation and conjecture, which was insufficient to raise a genuine issue of material fact to defeat summary judgment) (quoting *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985)).

Second, because of the timing of the alleged retaliatory acts that Dodd complains about in the May 22 grievance, the grievance is insufficient to raise a genuine issue of material fact that the alleged acts prevented him from continuing with the steps in the grievance policy after he informally grieved the secondhand-smoke issue with Conrad.  In response to the Court's order to amend his Complaint to state, "whether he filed any written grievances and appeals, the dates of such grievances, and the responses he received to his grievances" (Clerk's Nos. 5 at 2, 11 at 2, and 13 at 2), Dodd cited one grievance, which he maintains he filed on approximately April 5, 2006, against Defendants for negligence.  Dodd maintained that on April 11, he appealed the negative response he received.  According to the grievance policy, the response to his appeal would have been due on approximately April 26, within fifteen days after the appeal was received.  Dodd asserts he did not receive a response to his appeal before expiration of the fifteen-day time limit.  No evidence indicates a written extension was given.  The expiration of the time limit thus entitled Dodd after approximately April 26 to move to the next step in the grievance process, which was an appeal to the Grievance Appeal Coordinator within fifteen days.  In the grievance he filed on May 22, 2006, Dodd referred to alleged retaliatory acts against him on May 17 and 18.  Before May 17 and 18, however, he filed the April 5 written grievance against Defendants, and beginning on April 26, he had the opportunity to appeal the negative response to his grievance to the Grievance Appeal Coordinator, but he did not do so.  Dodd cannot show that any staff member's actions on or after May 17 and 18 prevented him from filing a written grievance, which he asserts he did on April 5, and from filing an appeal on the negative response to his April 5 grievance.

Third, the inmate's assertion that he filed a grievance against Defendants on April 5, 2006, and an appeal on April 11 undercuts any claim that his fear of retaliation made the administrative remedies unavailable to him before that time.

Finally, instead of filing an appeal to the Grievance Appeal Coordinator, as the prison's grievance policy entitled him to do when he did not receive Kerr's response to his April 11 appeal to her, Dodd sent Kerr a kite asking her to send him her response. It did not matter that Dodd had a subjective belief that the available procedure – appealing directly to the Grievance Appeal Coordinator after he did not receive Kerr's response – was unavailable. *See Lyon*, 305 F.3d at 809.

For these reasons, viewing the record in the light most favorable to Dodd, the Court finds the May 22, 2006, grievance is insufficient to raise a genuine issue of material fact concerning whether administrative remedies were unavailable to Dodd.

### b. June 4, 2006, Grievance Form

In the June 4, 2006, grievance form, Dodd asserts, "This is a pattern of harassment/also retaliation." (Pl.'s App. at 8.) This general reference to retaliation is mere speculation and conjecture, and does not provide sufficient evidence that any alleged retaliation was causally related to Dodd's attempt to informally resolve his secondhand smoke complaint with Conrad. *See Bloom*, 440 F. 3d at 1028-1029.

Dodd complains in the grievance form of an alleged retaliatory act on June 4, 2006. For the reasons discussed above in relation to the May 22, 2006, grievance, he cannot show that an official's act on June 4 prevented him from filing a written grievance before that time, which he asserts he did on April 5, 2006, or from filing an appeal on the negative response to his April 5 grievance.

Furthermore, the June 4 grievance form was unsigned by a grievance officer and had no grievance number. No evidence indicates the grievance form was filed and maintained as a record by the prison. As Kerr testified in her affidavit, and Dodd admitted, he filed only three grievances during his stay at the prison. None of the filed grievances to which Kerr refers were dated June 4, 2006. The Court finds that the form dated June 4, 2006, was not filed and provides

16

no evidence to support Dodd's contention that he filed grievances concerning officers' alleged retaliation against him for complaining to Conrad about secondhand smoke.

The Court finds the grievance form dated June 4, 2006, is insufficient to raise a genuine issue of material fact to support Dodd's allegation that administrative remedies were unavailable to him.

### c. June 5, 2006, Grievance Form

In the grievance form dated June 5, 2006, Dodd complains about "ongoing" harassment and retaliation by prison officials and states, "the harassment and the intimidation I have been ongoing since I've been here." (Pl.'s App. at 5-6.) These general references to retaliation are mere speculation and conjecture, and they do not provide sufficient evidence that any alleged retaliation was causally related to Dodd's attempt to informally resolve his secondhand-smoke complaint with Conrad. *See Bloom*, 440 F. 3d at 1028-1029.

Dodd complains in the grievance form of alleged acts by officers on June 5, 2006. As discussed above in relation to the May 22, 2006, grievance, and the June 4, 2006, grievance form, he cannot show that an official's act on June 5 prevented him from filing a written grievance before that time, as he did on April 5, 2006, or from filing an appeal on the negative response to his April 5 grievance.

The June 5 grievance form was unsigned by a grievance officer and had no grievance number. No evidence indicates the grievance form was filed and maintained as a record by the prison. None of the filed grievances attached to Kerr's affidavit were dated June 5, 2006. The Court finds that Dodd did not file the unnumbered grievance form dated June 5, 2006, and the form provides no evidence to support Dodd's contention that he filed grievances concerning officers' alleged retaliation against him for complaining to Conrad about secondhand smoke.

The Court finds the grievance form dated June 5, 2006, is insufficient to raise a genuine issue of material fact on the issue of whether administrative remedies were unavailable to Dodd.

Viewing the record in the light most favorable to Dodd, the Court finds that Dodd has not generated a genuine issue of material fact to support his claim that prison officials prevented him from exhausting his administrative remedies concerning secondhand smoke by retaliating against him for seeking informal resolution of the grievance with Conrad, thus causing him to

17

fear future retaliation if he continued pursuing his grievance through the remaining administrative steps. The Court finds Dodd has not generated a genuine issue of material fact concerning whether the grievance system was unavailable to him.[8]

### 2. *Foulk*-based Argument

Dodd next argues that, like the prisoner in *Foulk*, he sought informal resolution but prison officials ignored his attempt at informal resolution and prevented him from exhausting all his administrative remedies. In *Foulk*, the defendant correctional officer established that Foulk, an inmate, filed an informal resolution request, prison authorities failed to respond to his request, and the inmate thereafter did not file a grievance or grievance appeal. *Foulk*, 262 F. 3d at 698. Foulk's testimony indicated, however, that the authorities' failure to respond to his informal resolution request precluded him under prison policy from submitting a grievance, and thus he had exhausted his available administrative remedies, because no further administrative proceedings were available to him. *Id.* The defendant then failed to point to any evidence in the record to support the conclusion that the grievance process was in fact available to the prisoner despite prison authorities' failure to respond to Foulk's request for informal resolution. *Id.*

Here, Defendants established that Dodd did not exhaust his administrative remedies after he attempted informal resolution with Conrad. Unlike the inmate in *Foulk*, Dodd has not shown

---

[8] In support of his argument, Dodd also asserts his "legal library access was denied, he was placed in administrative segregation, and was specifically targeted for multiple K-9 searches." (Mem. Supp. Res. Defs.' Mot. Summ. J. at 2-3.) In support, he again cites the grievance he filed May 22, 2006, and the grievance forms dated June 4 and 5, 2006. As discussed above, none of these provide sufficient evidence to support his argument.

After reading the entire record, the Court notes the grievance Dodd filed July 11, 2005, related to a one-time denial of his access to the legal library. Even if Dodd complained to Conrad before July 11, however, he cannot show that the alleged act of denying his legal library access thwarted his attempt to exhaust his administrative remedies with regard to his secondhand smoke complaint, in that he asserts he filed a written grievance on April 5, 2006, and an appeal. Furthermore, no evidence indicates the denial of his legal library access was in anyway related to Dodd's complaint to Conrad. In the grievance Dodd filed April 25, 2006, he complained about his placement into segregation. No evidence relates this incident to Dodd's complaint to Conrad. Moreover, before his placement in segregation, Dodd had already filed his April 5 grievance against Defendants. The reference to canine searches is apparently pointing to the May 22, 2006, grievance discussed above.

that Conrad's failure to resolve his problem with secondhand smoke precluded him from exhausting his administrative remedies.  Moreover, Defendants have provided evidence that the grievance process was available to Dodd even though his attempt at informal resolution failed.  Such evidence included the affidavit of Katherine Kerr; grievances filed by Dodd after failed attempts, or no attempts, at informal resolution,  (Defs.' App. at 47, 58, and 65); and the prison's written grievance policy, which provided that if an inmate's request for informal resolution failed, his next step was to file a grievance, and which provided a procedure for inmates to follow if they did not receive a response to their grievance or appeal.  Moreover, Dodd stated he filed a written grievance against Defendants on April 5, 2006, and appealed the negative response on April 11.

Dodd explained in his Complaint why he did not complain to prison authorities after Conrad said he would handle the problem, but did not:  "I didn't bother after speaking on that . . . and other issue and nothing become of them issue.  Like now, they are still smoke." (Defs.' App. at 6.)  Dodd's subjective belief that there was no point in further pursuing his administrative remedies does not matter in determining whether administrative procedures were available to him.  *See Lyon*, 305 F.3d at 809.  As discussed above, Dodd has not provided sufficient evidence for a jury to find that officials prevented him from exhausting his administrative remedies by retaliating against him because of his complaints to Conrad.

The Court finds that no genuine issues of material facts remain in dispute, and Defendants have established their affirmative defense of failure to exhaust as a matter of law.  Accordingly, the Court respectfully recommends that Defendants' Motion for Summary Judgment be granted, and that Dodd's claims against Defendants be dismissed without prejudice.

## RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED, under 28 U.S.C. § 636(b)(1)(B), that Defendants' Motion for Summary Judgment (Clerk's No. 33) be **granted** for the reasons discussed above, and that Plaintiff's claims against Defendants be dismissed without prejudice.

IT IS ORDERED that the parties have until June 18, 2008, to file written objections to this Report and Recommendation, under 28 U.S.C. § 636(b)(1), unless an extension of time for

good cause is obtained.  *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990) (per curiam); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993).  The Court will freely grant such extensions.  *Martin v. Ellandson*, 122 F. Supp. 2d 1017, 1025 (S.D. Iowa 2000).  Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and set forth the basis for such objections.  *See* Fed.R.Civ.P. 72; *Thompson*, 897 F.2d at 357; *Martin*, 122 F. Supp. 2d at 1025.  Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001) (citing *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994)).

**IT IS SO ORDERED**.

Dated this 28th day of May, 2008.

_____
CELESTE F. BREMER
UNITED STATES MAGISTRATE JUDGE